UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| **DR. JEMIMAH YOUNG** § | |
| § | |
| *Plaintiff*, § | |
| § | CIVIL ACTION NO. 4:25-cv-6321 |
| v. § | |
| § | JURY TRIAL DEMANDED |
| **TEXAS A&M UNIVERSITY SYSTEM** and § | |
| **TEXAS A&M AT COLLEGE STATION** § | |
| § | |
| *Defendants*. § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Dr. Jemimah "Mimi" Young ("Plaintiff"), by and through her attorneys, brings this action for damages and other legal and equitable relief arising from Defendants TEXAS A&M UNIVERSITY SYSTEM ("Defendant TAMU System") and TEXAS A&M AT COLLEGE STATION ("Defendant TAMU CS" and collectively "Defendants") unlawful discrimination and retaliation against her based on race and sex.

## INTRODUCTION

1. This is an action brought by Plaintiff seeking damages from Defendants for acts of intentional discrimination based on race, sex, and retaliation. Defendant's acts of discrimination and retaliation are in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq.* ("Section 1981"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"), the Texas Labor Code, as amended, Tex. Lab. Code §§ 21.001 *et seq.* (the "TLC"), and any other cause of action that can be inferred from the facts set forth herein.

ORIGINAL COMPLAINT

1

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) Title VII, (iv) EPA, and (v) Section 1981.

3. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial District. Venue is also proper in that the acts complained of herein, including unlawful employment practices, occurred within the federal district over which this Court has jurisdiction.

## PARTIES

5. Plaintiff is a Black/South Korean-American female and an employee of Defendants within the meaning of Title VII, Section 1981, the EPA, and the TLC.

6. Defendant TAMU System is a state entity organized under the laws of Texas.

7. Defendant TAMU CS is a state entity organized under the laws of Texas.

8. During all relevant times, Defendants engaged in an industry affecting commerce and had 15 or more employees.

**ORIGINAL COMPLAINT**

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

9. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

10. Plaintiff received her Notice of Right to Sue letter from the EEOC and now files this Complaint within 90 days of receiving that Notice of Right to Sue letter.

## STATEMENT OF FACTS

**A.** *Plaintiff's employment with Defendants begins.*

11. Defendant TAMU CS is "an institution of higher education located in the City of College Station. It is under the management and control of the board of directors of [Defendant TAMU System]." TEX. EDUCATION CODE § 86.02.

12. In January 2020, Defendants recruited Plaintiff, a Black/South Korean-American female, to serve as Program Chair of Defendants' Multicultural Education Program (the "ME Program"). The ME Program is a division of Defendants' Teaching Learning and Culture Department (the "TLAC Department") which itself was a division of Defendants' College of Education and Human Development (the "CEHD College").

13. Prior to accepting the position, Plaintiff had been in the process of being granted tenure at the University of Iowa. Plaintiff accepted Defendants' job offer because Defendants promised that Plaintiff would be hired directly into a tenured Associate Professor position.

14. However, when Plaintiff arrived in College Station, Defendants told Plaintiff that she would not be hired into a tenured position, but instead would have to undergo Defendants' full tenure review process.

15. Plaintiff was also assigned an office with unassembled furniture and no computer, while similarly situated non-Black and/or female coworkers were given fully equipped offices and computers.

**B. *Defendants discriminate and retaliate against Plaintiff*.**

16. In August 2021, Plaintiff was recruited to serve as a Quality Enhancement Plan (the "QEP") Faculty Lead, while still serving as Associate Professor. The purpose of the QEP included "eliminating disparities in retention and graduation rates across ethnic, first generation statute, and socioeconomic strata."

17. Upon learning of the recruitment, Plaintiff's then-Department Chair Michael A. de Miranda ("Dean de Miranda")[1] became upset and threatened that if Plaintiff accepted the position, it would negatively impact her chances to be promoted to a tenured Full Professor position.

18. Nevertheless, Plaintiff accepted the Faculty Lead position.

19. In August 2022, Plaintiff was recruited to serve as Assistant Vice President for Faculty Affairs ("AVP") in Defendants' Office of Diversity and was tasked with promoting Diversity, Equity, and Inclusion ("DEI") initiatives. Once again, Defendants ensured Plaintiff that she could serve as AVP concurrently with her Associate Professor position.

20. However, Plaintiff's interim Chair of the TLAC Department, Dr. Clair Katz ("Dr. Katz"), again threatened Plaintiff that if she accepted the position, it would affect her ability to be promoted to Full Professor.

21. Nevertheless, Plaintiff accepted the position.

---

[1] Later, in August 2022, de Miranda was promoted to Dean of the College of Education and Human Development.

**ORIGINAL COMPLAINT**

22. As AVP, Plaintiff and her staff were subject to significant harassment from fellow faculty and community members who opposed the DEI initiatives. The harassment included discriminatory emails and accusations of favoring non-white faculty. Persons would also lurk outside of Plaintiff's office to intimidate her and her staff. The harassment became so severe that Plaintiff and her staff had to remove their pictures from the Office of Diversity website and have panic buttons installed in their office.

23. Also, less than a month after accepting the AVP position, Plaintiff was removed Plaintiff from her position as ME Program Chair. Plaintiff was replaced by Dr. Paul Hernandez, a Hispanic male who lacked expertise in multicultural education.

24. Then, Plaintiff discovered that a colleague had falsely told Plaintiff's graduate students and mentors that she could no longer mentor them because of her removal from the ME Program Chair position.

25. Plaintiff complained about the above discrimination and retaliation to Dr. Katz. However, Dr. Katz, a white female, once again failed to intervene.

26. Shortly after this complaint, Plaintiff was removed from Departmental listservs and communications, which severely impacted Plaintiff's potential to be promoted to Full Professor.

27. In July 2023, Defendants dissolved the Office of Diversity. Plaintiff made a request to Associate Provost Tim Scott that her AVP position be relocated to the Office of Faculty Affairs. Plaintiff's request was denied, and instead her job duties and responsibilities were assigned to her less experienced white assistant, Alyssa Brigham.

28. As a result, Plaintiff was demoted back into a faculty member-only position, resulting in a significant decrease in pay.. Plaintiff was then told that she would not teach that semester.

ORIGINAL COMPLAINT

29. Throughout the Fall 2023 semester, Plaintiff was further excluded from Departmental programs and suffered verbal abuse from male and/or non-Black co-workers.

30. Plaintiff complained about this treatment in December 2023 to her supervisor. But Plaintiff's complaints were ignored.

31. In Fall 2024, Plaintiff submitted her application for Full Professor. Plaintiff's application included positive external review letters, and the requisite votes from departmental colleagues in favor of Plaintiff's promotion.

32. Defendants' promotional process required that the College Committee review Plaintiff's application and make a letter of recommendation to Dean de Miranda. The College Committee did not include any Black members, which was a violation of Defendants' policies.

33. On November 7, 2024, Plaintiff was told by Interim Department Head Karen Rambo-Hernandez ("Rambo-Hernandez") that the College Committee had unanimously voted against Plaintiff's promotion.

34. Plaintiff did not believe the result and therefore requested a copy of the letter of recommendation. Defendants told Plaintiff that she would have to submit a Freedom of Information Act ("FOIA") request. Plaintiff informed Defendants that this violated Defendants' policies and repeatedly requested to review the letter of recommendation.

35. Shortly after, Plaintiff was summoned to Associate Dean Dan Zhang's office and pressured to withdraw her application to Full Professor. Upon information and belief, a withdrawal of the application would impact Plaintiff's rights to review the letter of recommendation. Accordingly, Plaintiff refused.

36. On November 11, 2024, Plaintiff hired legal counsel who sent a letter of representation to Defendants regarding the above incidents.

ORIGINAL COMPLAINT

37. Later that month, Plaintiff suffered a miscarriage due to the stress and anxiety caused by Defendants actions.

38. Around that time, Plaintiff also complained to Dr. Katz that Dean de Miranda did not like women and that she felt he had lied about Plaintiff's tenure decision.

39. On December 2, 2025, Plaintiff was suddenly promoted to Full Professor.

40. However, shortly after, an anonymous Title IX complaint was filed against Plaintiff regarding subjects she was teaching in her classroom. On December 5, 2024, Plaintiff was investigated by the Office of Civil Rights and threatened that she would be fully investigated if she was ever accused of anything else in the future.

41. During the Spring 2025 semester, Defendants also denied Plaintiff's graduate students teaching opportunities.

42. Moreover, Plaintiff research funds that had been granted to her were misallocated or removed by Defendants without Plaintiff's consent.[2]

43. In May 2025, Dean de Miranda suddenly opened an investigation into Plaintiff's reimbursed travel expenses with the Risk, Compliance, and Ethics Department. The investigation concerned travel expenses as far back as 2023, even though Defendants' policies mandate that issues with travel expenses be resolved within 90 days of submittal.

44. In November 2025, an additional investigation was opened by Defendants' Risk, Compliance, and Ethics Department regarding Plaintiff use of "Course Releases."[3] Plaintiff had previously submitted two Course Releases without issue or investigation. Plaintiff is unaware of

---

[2] Plaintiff did not discover the misallocation until May or June of 2025.

[3] A "Course Release" is where a professor is excused from teaching a course during a semester because of an authorized reason. When submitting the Course Release, the professor is not required to identify the reason for the Course Release.

**ORIGINAL COMPLAINT**

any other professors who have likewise been subject to investigation over their use of Course Releases.

45. Plaintiff has continually requested to review the letter of recommendation by the College Committee but has been denied access. To date, Plaintiff has not been able to review the letter of recommendation.

C. *Plaintiff's discriminatory pay.*

46. Plaintiff has also been subject to discriminatory pay throughout her employment with Defendants.

47. Under Defendants' policies and practices, faculty members are typically given two types of annual salary increases to their base salary: (1) an ad hoc compensation increase; and (2) a merit increase.

48. Prior to September 2022, Plaintiff's base salary was $91,871.81.

49. In September 2022, Plaintiff was given (1) a merit increase of 23.10%; and (2) an ad hoc compensation increase of .95%. Accordingly, Plaintiff's faculty base salary would have been $114,166.07.

50. However, this is also when Plaintiff accepted the AVP position, and as a result, Plaintiff received an additional 19.27% increase. Accordingly, in September 2022, her total annual salary was $136,166.08.

51. In 2023, when Plaintiff was demoted back to a faculty-only position, her total salary was inexplicably reduced to $98,079.03—well below the $114,166.07 that was her previous faculty-only base salary

ORIGINAL COMPLAINT

52. Additionally, even though Plaintiff had been in an administrative position, she was still entitled to merit increases to her faculty base salary. Thus, Plaintiff's $98,079.03 compensation in 2023 represents a severely-reduced pay based on sex and race discrimination.

53. As a result, Plaintiff became one of the lowest-paid faculty members at her rank in her entire department.

54. Moreover, because Defendant's salary increase policies are percentage based, Plaintiff has continued to receive a severely-reduced salary because of race and sex discrimination.

## CAUSES OF ACTION

### COUNT I
### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
42 U.S.C. §§ 1981 *et. seq.*
*Disparate Treatment*

55. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

56. The conduct alleged herein violates 42 U.S.C. §§ 1981 *et seq.* because Defendants discriminated against Plaintiff in the terms and conditions of her employment because of her race by, *inter alia*, subjecting Plaintiff to discriminatory compensation, demoting Plaintiff, denying Plaintiff promotions, eliminating Plaintiff's job duties, and subjecting Plaintiff to baseless investigations and discipline.

57. But for her race, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

58. Plaintiff's requests for relief are set forth below.

## COUNT II
### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
42 U.S.C. §§ 1981 *et. seq.*
*Hostile Work Environment*

59. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

60. The conduct alleged herein violates 42 U.S.C. §§ 1981 *et seq.* because Defendants subjected Plaintiff to a racially hostile work environment because of her race, including but not limited to, discriminatory remarks and intimidating conduct because of her race, Black.

61. But for her race, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

62. Plaintiff's requests for relief are set forth below.

## COUNT III
### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
42 U.S.C. §§ 1981 *et. seq.*
*Retaliation*

63. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

64. Plaintiff lodged complaints with Defendants regarding the discrimination she experienced based on her race to which she was subjected, and as such, engaged in protected activity.

65. Defendants retaliated against Plaintiff by subjecting her to different terms and conditions of employment, including *inter alia* demoting Plaintiff, disparate treatment in salary, and subjecting Plaintiff to unwarranted investigations in retaliation for engaging in protective activity.

66. But for her race, Plaintiff would not have been subjected to this retaliation.

**ORIGINAL COMPLAINT**

67. Plaintiff's requests for relief are set forth below.

## COUNT IV
**INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE**
Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. §§ 2000e *et seq.*
*Disparate Treatment*

68. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

69. The conduct alleged herein violates Title VII because Defendants discriminated against Plaintiff in the terms and conditions of her employment because of her race and/or sex by, *inter alia*, subjecting Plaintiff to discriminatory compensation, demoting Plaintiff, denying Plaintiff promotions, eliminating Plaintiff's job duties, and subjecting Plaintiff to baseless investigations and discipline.

70. But for her race and/or sex, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

71. Plaintiff's requests for relief are set forth below.

## COUNT V
**INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX**
Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. §§ 2000e *et seq.*
*Hostile Work Environment*

72. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

73. The conduct alleged herein violates Title VII because Defendants subjected Plaintiff to a racially hostile work environment because of her race and/or sex, including but not limited to, discriminatory remarks and intimidating conduct because of her race, Black, and/or sex, female.

74. But for her race and/or sex, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

75. Plaintiff's requests for relief are set forth below.

### COUNT VI
**INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE AND SEX**
Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. §§ 2000e *et seq.*
*Retaliation*

76. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

77. Plaintiff lodged complaints with Defendants regarding the discrimination she experienced based on her race and/or sex to which she was subjected, and as such, engaged in protected activity.

78. Defendants retaliated against Plaintiff by subjecting her to different terms and conditions of employment, including *inter alia* demoting Plaintiff, disparate treatment in salary, and subjecting Plaintiff to unwarranted investigations in retaliation for engaging in protective activity.

79. But for engaging in protected activity, Plaintiff would not have been subjected to this retaliation.

80. Plaintiff's requests for relief are set forth below.

### COUNT VII
**EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX**
The Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*
*Discriminatory Compensation*

81. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

**ORIGINAL COMPLAINT**

82. Defendants discriminated against Plaintiff on the basis of sex by paying Plaintiff lower wages and other forms of compensation than Defendants paid to male employees for equal work on jobs, the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions, in violation of the Equal Pay Act.

83. Plaintiff and her male predecessors and/or comparators held essentially identical job positions, in the same establishment, performed equal work that required equal skill, effort, and responsibility, and the work was performed under the same conditions.

84. The differential in pay between Plaintiff and her male predecessors was not due to seniority, merit, quantity or quality of production, or a factor other than sex. Instead, the differential in pay was due to Plaintiff's gender.

85. Defendants' foregoing conduct also constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to recover damages for three years before the date that this action was commenced pursuant to 29 U.S.C. § 255(a).

86. Plaintiff's requests for relief are set forth below.

## COUNT VIII
## INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE AND SEX
The Employment Discrimination Act, as amended,
Tex. Lab. Code §§ 21.001 *et seq.*
*Disparate Treatment*

87. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

88. The conduct alleged herein violates the Texas Labor Code because Defendants discriminated against Plaintiff in the terms and conditions of her employment because of her race and/or sex by, *inter alia*, subjecting Plaintiff to discriminatory compensation, demoting Plaintiff,

ORIGINAL COMPLAINT

denying Plaintiff promotions, eliminating Plaintiff's job duties, and subjecting Plaintiff to baseless investigations and discipline.

89. But for her race and/or sex, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

90. Plaintiff's requests for relief are set forth below.

## COUNT IV
## INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE AND SEX
The Employment Discrimination Act, as amended,
Tex. Lab. Code §§ 21.001 *et seq.*
*Hostile Work Environment*

91. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

92. The conduct alleged herein violates Title VII because Defendants subjected Plaintiff to a racially hostile work environment because of her race including but not limited to, discriminatory remarks and intimidating conduct because of her race, Black, and/or sex, female.

93. But for her race and/or sex, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

94. Plaintiff's requests for relief are set forth below.

## COUNT X
## INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE AND SEX
The Texas Employment Discrimination Act, as amended,
Tex. Lab. Code §§ 21.001 *et seq.*
*Retaliation*

95. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

**ORIGINAL COMPLAINT**

96. Plaintiff lodged complaints with Defendants regarding the discrimination she experienced based on her race and sex to which she was subjected, and as such, engaged in protected activity.

97. Defendants retaliated against Plaintiff by subjecting her to different terms and conditions of employment, including *inter alia* demoting Plaintiff, disparate treatment in salary, and subjecting Plaintiff to unwarranted investigations in retaliation for engaging in protective activity.

98. But for her race and/or sex, Plaintiff would not have been subjected to this retaliation

99. Plaintiff's requests for relief are set forth below.

## DEMAND FOR JURY TRIAL

100. Plaintiff demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

101. That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under the federal and state laws identified above prohibiting discrimination and retaliation in employment;

102. That judgment be entered in favor of Plaintiff as set forth herein, and against Defendants, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiff;

103. That Plaintiff be awarded compensatory damages for her employment discrimination claims including for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

ORIGINAL COMPLAINT

104. That Plaintiff be awarded lost wages and liquidated damages under the EPA;

105. That Plaintiff be awarded compensatory damages for her retaliatory treatment under Title VII.

106. That Plaintiff be awarded punitive damages for discriminatory practices done with malice or with reckless indifference to the federally protected rights of Plaintiff;

107. That Plaintiff be awarded pre-and post-judgment interest;

108. That the Court award Plaintiff reasonable attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs;

109. That the Defendants be ordered to require training regarding discrimination based upon race, sex, and retaliation; and

110. That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law.

**WHEREFORE,** Plaintiff also seeks injunctive relief, including but not limited to:

111. Training on the subject of employment discrimination for all of Defendants' employees;

112. Implicit bias training for all managers conducted by reputable outside vendors;

113. Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

114. Active monitoring of the work areas to ensure compliance with discrimination policies; and

115. Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief.

Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: December 29, 2025                                  Respectfully submitted,

*/s/ Brian Pounds*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
Brian Pounds
Texas State Bar No. 24126432
bpounds@equalrights.law
**ELLWANGER HENDERSON LLLP**
11149 Research Blvd., Ste. 100
Austin, Texas 78759
Telephone: (737) 808-2260
Facsimile: (737) 808-2262

**COUNSEL FOR PLAINTIFF**

**ORIGINAL COMPLAINT**