**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **DR. JEMIMAH YOUNG** | § | |
| | § | |
| ***Plaintiff*,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:25-cv-6321** |
| | § | |
| **TEXAS A&M AT COLLEGE STATION, DAN ZHANG, MICHAEL de MIRANDA, and DR. CLAIRE KATZ, in their individual capacities,** | § § § § | **JURY TRIAL DEMANDED** |
| | § | |
| ***Defendants*.** | § | |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

Plaintiff Dr. Jemimah "Mimi" Young ("Plaintiff"), by and through her attorneys, brings this action for damages and other legal and equitable relief arising from Defendants TEXAS A&M AT COLLEGE STATION, ("Defendant TAMU CS"), DAN ZHANG ("Defendant Zhang"), MICHAEL de MIRANDA ("Defendant de Miranda"), and Dr. CLAIRE KATZ'S ("Defendant Dr. Katz" and collectively "Defendants") unlawful discrimination and retaliation against her based on race and sex.

**INTRODUCTION**

1. This is an action brought by Plaintiff seeking damages from Defendant for acts of intentional discrimination based on race, sex, and retaliation. Defendant's acts of discrimination and retaliation are in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 *et seq*. ("Section 1981"), the Equal Pay Act of 1963, 29 U.S.C. § 206(d) ("EPA"), and any other cause of action that can be inferred from the facts set forth herein.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, and pursuant to 28 U.S.C. §§ 1343(3) and 1343(4), which confer original jurisdiction upon this Court in a civil action to recover damages or to secure equitable relief (i) under any Act of Congress providing for the protection of civil rights; (ii) under the Declaratory Judgment Statute, 28 U.S.C. § 2201; (iii) Title VII, (iv) EPA, and (v) Section 1981.

3. This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1367, which confers supplemental jurisdiction upon this Court for all other claims that are so related to claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this judicial District. Venue is also proper in that the acts complained of herein, including unlawful employment practices, occurred within the federal district over which this Court has jurisdiction.

## PARTIES

5. Plaintiff is a Black/South Korean-American female and an employee of Defendants within the meaning of Title VII, Section 1981, and the EPA.

6. Defendant TAMU CS is a state entity organized under the laws of Texas.

7. Defendant Dan Zhang is a supervisory employee of Defendant TAMU CS. Defendant Zhang is being sued in his individual capacity. At all times, Defendant Zhang was acting under the color of law as an employee of Defendant TAMU CS.

8. Defendant Michael de Miranda is a supervisory employee of Defendant TAMU CS. Defendant de Miranda is being sued in his individual capacity. At all times, Defendant de Miranda was acting under the color of law as an employee of Defendant TAMU CS.

9. Defendant Dr. Claire Katz is a supervisory employee of Defendant TAMU CS. Defendant Dr. Katz is being sued in his individual capacity. At all times, Defendant Dr. Katz was acting under the color of law as an employee of Defendant TAMU CS.

10. During all relevant times, Defendant TAMU CS engaged in an industry affecting commerce and had 15 or more employees.

## EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES

11. Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC).

12. Plaintiff received her Notice of Right to Sue letter from the EEOC and now files this Complaint within 90 days of receiving that Notice of Right to Sue letter.

## STATEMENT OF FACTS

### A. *Plaintiff's employment with Defendant begins.*

13. Defendant TAMU CS is "an institution of higher education located in the City of College Station. It is under the management and control of the board of directors of the Texas A&M University System." TEX. EDUCATION CODE § 86.02.

14. In January 2020, Defendant TAMU CS recruited Plaintiff, a Black/South Korean-American female, to serve as Program Chair of Defendant's Multicultural Education Program (the "ME Program"). The ME Program is a division of Defendant TAMU CS's Teaching Learning and Culture Department (the "TLAC Department") which itself was a division of Defendant TAMU CS's College of Education and Human Development (the "CEHD College").

15. Prior to accepting the position, Plaintiff had been in the process of being granted tenure at the University of Iowa. Plaintiff accepted Defendant TAMU CS's job offer because she was promised that Plaintiff would be hired directly into a tenured Associate Professor position.

16. However, when Plaintiff arrived in College Station, Defendant told Plaintiff that she would not be hired into a tenured position, but instead would have to undergo Defendant TAMU CS's full tenure review process.

17. Plaintiff was also assigned an office with unassembled furniture and non-computer, while similarly situated non-Black and/or female coworkers were given fully equipped offices and computers.

**B. *Defendants discriminate and retaliate against Plaintiff*.**

18. In August 2021, Plaintiff was recruited to serve as a Quality Enhancement Plan (the "QEP") Faculty Lead, while still serving as Associate Professor. The purpose of the QEP included "eliminating disparities in retention and graduation rates across ethnic, first generation statute, and socioeconomic strata."

19. Upon learning of the recruitment, Plaintiff's then-Department Chair Defendant de Miranda[1] became upset and threatened that if Plaintiff accepted the position, it would negatively impact her chances to be promoted to a tenured Full Professor position.

20. Nevertheless, Plaintiff accepted the Faculty Lead position.

21. In August 2022, Plaintiff was recruited to serve as Assistant Vice President for Faculty Affairs ("AVP") in Defendant TAMU CS's Office of Diversity and was tasked with

[1] Later, in August 2022, de Miranda was promoted to Dean of the College of Education and Human Development.

promoting Diversity, Equity, and Inclusion ("DEI") initiatives. Once again, Plaintiff was ensured that she could serve as AVP concurrently with her Associate Professor position.

22. However, Plaintiff's interim Chair of the TLAC Department, Defendant Dr. Katz, again threatened Plaintiff that if she accepted the position, it would affect her ability to be promoted to Full Professor.

23. Nevertheless, Plaintiff accepted the position.

24. As AVP, Plaintiff and her staff were subject to significant harassment from fellow faculty and community members who opposed the DEI initiatives. The harassment included discriminatory emails and accusations of favoring non-white faculty. Persons would also lurk outside of Plaintiff's office to intimidate her and her staff. The harassment became so severe that Plaintiff and her staff had to remove their pictures from the Office of Diversity website and have panic buttons installed in their office.

25. Also, less than a month after accepting the AVP position, Plaintiff was removed from her position as ME Program Chair and replaced by Dr. Paul Hernandez, a Hispanic male who lacked expertise in multicultural education.

26. Then, Plaintiff discovered that a colleague had falsely told Plaintiff's graduate students and mentors that she could no longer mentor them because of her removal from the ME Program Chair position.

27. Plaintiff complained about the above discrimination and retaliation to Defendant Dr. Katz. However, Defendant Dr. Katz, a white female, once again failed to intervene.

28. Shortly after this complaint, Plaintiff was removed from Departmental listservs and communications, which severely impacted Plaintiff's potential to be promoted to Full Professor.

29. In July 2023, Defendant TAMU CS dissolved the Office of Diversity. Plaintiff made a request to Associate Provost Tim Scott that her AVP position be relocated the Office of Faculty Affairs. Plaintiff's request was declined, and instead her job duties and responsibilities were assigned to her less experienced, white assistant Alyssa Brigham.

30. As a result, Plaintiff was demoted back into a faculty member-only position, resulting in a significant decrease in pay. *See* supra. Plaintiff was then told that she would not teach that semester.

31. Throughout the Fall 2023 semester, Plaintiff was even further excluded from Departmental programs and suffered verbal abuse from male and/or non-Black co-workers.

32. Plaintiff complained about this treatment in December 2023 to her supervisor. But Plaintiff's complaints were ignored.

33. In Fall 2024, Plaintiff submitted her application for Full Professor. Plaintiff's application included positive external review letters, and the requisite votes from departmental colleagues in favor of Plaintiff's promotion.

34. Defendant TAMU CS's promotional process required that the College Committee review Plaintiff's application and make a letter recommendation to Defendant de Miranda. The College Committee did not include any Black members, which was a violation of Defendant TAMU CS's policies.

35. On November 7, 2024, Plaintiff was told by Interim Department Head Karen Rambo-Hernandez (white, female) ("Rambo-Hernandez") that the College Committee had unanimously voted against Plaintiff's promotion.

36. Plaintiff did not believe the result and therefore requested a copy of the letter recommendation. Plaintiff was told that she would have to submit a Freedom of Information Act

("FOIA"). Plaintiff responded that this violated Defendant TAMU CS's policies and repeatedly requested to review the letter recommendation.

37. Shortly after, Plaintiff was summoned to Associate Dean, Defendant Zhang's, office and pressured to withdraw her application to Full Professor. Upon information and belief, a withdrawal of the application would impact Plaintiff's rights to review the letter recommendation. Accordingly, Plaintiff refused.

38. On November 11, 2024, Plaintiff hired legal counsel who sent a letter of representation to Defendants regarding the above incidents.

39. Later that month, Plaintiff suffered a miscarriage due to the stress and anxiety caused by Defendants actions.

40. Around that time, Plaintiff also complained to Defendant Dr. Katz that Defendant de Miranda did not like women and that she felt he had lied about Plaintiff's tenure decision.

41. On December 2, 2025, Plaintiff was suddenly promoted to Full Professor.

42. However, shortly after, an anonymous Title IX complaint was filed against Plaintiff regarding subjects she was teaching in her classroom. On December 5, 2024, Plaintiff was investigated by Defendant TAMU CS's Office of Civil Rights and threatened that she would be fully investigated if she was ever accused of anything else in the future.

43. During the Spring 2025 semester, Plaintiff was also denied graduate students teaching opportunities.

44. Moreover, Plaintiff's research funds that had been granted to her were misallocated or removed without Plaintiff's consent.[2]

[2] Plaintiff did not discover the misallocation until May or June of 2025.

45. In May 2025, Defendant de Miranda suddenly opened an investigation into Plaintiff's reimbursed travel expenses with the Risk, Compliance, and Ethics Department. The investigation concerned travel expenses as far back as 2023, even though Defendant TAMU CS's policies mandate that issues with travel expenses be resolved within 90 days of submittal.

46. In November 2025, an additional investigation was opened by Defendant TAMU CS's Risk, Compliance, and Ethics Department regarding Plaintiff use of "Course Releases."[3] Plaintiff had previously submitted two Course Releases without issue or investigation. Plaintiff is unaware of any other professors who have likewise been subject to investigation over their use of Course Releases.

47. Plaintiff has continually requested to review the letter recommendation by the College Committee but has been denied access. To date, Plaintiff has not been able to review the letter recommendation.

**C. *Plaintiff's discriminatory pay.***

48. Plaintiff has also been subject to discriminatory pay throughout her employment.

49. Under Defendants' policies and practices, faculty members are typically given two types of annual salary increases to their base salary: (1) an ad hoc compensation increase; and (2) a merit increase.

50. Prior to September 2022, Plaintiff's base salary was $91,871.81.

51. In September 2022, Plaintiff was given (1) a merit increase of 23.10%; and (2) an ad hoc compensation increase of .95%. Accordingly, Plaintiff's faculty base salary would have been $114,166.07.

[3] A "Course Release" is where a professor is excused from teaching a course during a semester because of an authorized reason. When submitting the Course Release, the professor is not required to identify the reason for the Course Release.

52. However, this is also when Plaintiff accepted the AVP position, and as a result, Plaintiff received an additional 19.27% increase. Accordingly, in September 2022, her total annual salary was $136,166.08.

53. But, in 2023 when Plaintiff was demoted back to a faculty-only position, her total salary was inexplicably reduced to $98,079.03—well below the $114,166.07 that was her previous faculty-only base salary. The Memorandum informing Plaintiff of the discriminatory salary decision was sent "FROM" Defendant Dr. Katz and "THROUGH" Defendant de Miranda.

54. Additionally, even though Plaintiff had been in an administrative position, she was still entitled to merit increases to her faculty base salary. Thus, Plaintiff's $98,079.03 compensation in 2023 represents a severely-reduced pay based on sex and race discrimination.

55. As a result, Plaintiff became one of the lowest-paid faculty members at her rank in her entire department.

56. Moreover, because Defendant's salary increase policies are percentage based, Plaintiff has continued to receive a severely-reduced salary because of race and sex discrimination.

## CAUSES OF ACTION

### COUNT I
### EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE
42 U.S.C. § 1983, Civil Action for Deprivation of Rights
(*Violation of §§ 1981 et. seq. - Disparate Treatment*)
(As against Defendants Zhang, de Miranda, and Dr. Katz)

57. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

58. The conduct alleged herein violates 42 U.S.C. §§ 1981 *et seq*. because Defendants discriminated against Plaintiff in the terms and conditions of her employment because of her race by, *inter alia*, subjecting Plaintiff to discriminatory compensation, demoting Plaintiff, denying

Plaintiff promotions, eliminating Plaintiff's job duties, and subjecting Plaintiff to baseless investigations and discipline.

59. But for her race, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

60. Plaintiff's requests for relief are set forth below.

**COUNT II**
**EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE**
42 U.S.C. § 1983, Civil Action for Deprivation of Rights
(*Violation of 42 U.S.C. §§ 1981 et. seq. – Retaliation*)
(As against Defendants Zhang, de Miranda, and Dr. Katz)

61. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

62. Plaintiff lodged complaints with Defendants regarding the discrimination she experienced based on her race to which she was subjected, and as such, engaged in protected activity.

63. Defendants retaliated against Plaintiff by subjecting her to different terms and conditions of employment, including *inter alia* demoting Plaintiff, disparate treatment in salary, and subjecting Plaintiff to unwarranted investigations in retaliation for engaging in protective activity.

64. But for her race, Plaintiff would not have been subjected to this retaliation

65. Plaintiff's requests for relief are set forth below.

**<u>COUNT III</u>**
**INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE**
Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. §§ 2000e *et seq.*
*Disparate Treatment*
(As to Defendant TAMU CS)

66. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

67. The conduct alleged herein violates Title VII because Defendant TAMU CS discriminated against Plaintiff in the terms and conditions of her employment because of her race and/or sex by, *inter alia*, subjecting Plaintiff to discriminatory compensation, demoting Plaintiff, denying Plaintiff promotions, eliminating Plaintiff's job duties, and subjecting Plaintiff to baseless investigations and discipline.

68. But for her race and/or sex, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

69. Plaintiff's requests for relief are set forth below.

**<u>COUNT IV</u>**
**INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX**
Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. §§ 2000e *et seq.*
*Hostile Work Environment*
(As to Defendant TAMU CS)

70. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

71. The conduct alleged herein violates Title VII because Defendant TAMU CS subjected Plaintiff to a racially hostile work environment because of her race and/or sex, including but not limited to, discriminatory remarks and intimidating conduct because of her race, Black, and/or sex, female.

72. But for her race and/or sex, Plaintiff would not have been subjected to discriminatory terms and conditions of employment.

73. Plaintiff's requests for relief are set forth below.

**COUNT V**
**INTERSECTIONAL EMPLOYMENT DISCRIMINATION ON THE BASIS OF RACE AND SEX**
Title VII of the Civil Rights Act of 1964, as amended
42 U.S.C. §§ 2000e *et seq.*
*Retaliation*
(As to Defendant TAMU CS)

74. Plaintiff is a member of a protected class and repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

75. Plaintiff lodged complaints with Defendant TAMU CS regarding the discrimination she experienced based on her race and/or sex to which she was subjected, and as such, engaged in protected activity.

76. Defendant TAMU CS retaliated against Plaintiff by subjecting her to different terms and conditions of employment, including *inter alia* demoting Plaintiff, disparate treatment in salary, and subjecting Plaintiff to unwarranted investigations in retaliation for engaging in protective activity.

77. But for engaging in protected activity, Plaintiff would not have been subjected to this retaliation.

78. Plaintiff's requests for relief are set forth below.

## COUNT VI
**EMPLOYMENT DISCRIMINATION ON THE BASIS OF SEX**
The Equal Pay Act, 29 U.S.C. § 206(d) *et seq.*
*Discriminatory Compensation*
(As to Defendant TAMU CS)

79. Plaintiff repeats and re-alleges the allegations contained in the paragraphs above, as if fully set forth herein.

80. Defendant TAMU CS discriminated against Plaintiff on the basis of sex by paying Plaintiff lower wages and other forms of compensation than Defendant TAMU CS paid to male employees for equal work on jobs, the performance of which require equal skill, effort, and responsibility, and which are performed under similar working conditions, in violation of the Equal Pay Act.

81. Plaintiff and her male predecessors and/or comparators held essentially identical job positions, in the same establishment, performed equal work that required equal skill, effort, and responsibility, and the work was performed under the same conditions.

82. The differential in pay between Plaintiff and her male predecessors was not due to seniority, merit, quantity or quality of production, or a factor other than sex. Instead, the differential in pay was due to Plaintiff's gender.

83. Defendant TAMU CS's foregoing conduct also constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 255(a), entitling Plaintiff to recover damages for three years before the date that this action was commenced pursuant to 29 U.S.C. § 255(a).

84. Plaintiff's requests for relief are set forth below.

## DEMAND FOR JURY TRIAL

85. Plaintiff demands a jury trial on all matters raised in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

86. That the practices of the Defendants complained of herein be determined and adjudged to be in violation of the rights of Plaintiff under the federal and state laws identified above prohibiting discrimination and retaliation in employment;

87. That judgment be entered in favor of Plaintiff as set forth herein, and against Defendants, for back pay (including interest or an appropriate inflation factor), front pay, benefits and all other amounts owed to Plaintiff;

88. That Plaintiff be awarded compensatory damages for her employment discrimination claims including for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

89. That Plaintiff be awarded lost wages and liquidated damages under the EPA;

90. That Plaintiff be awarded compensatory damages for her retaliatory treatment under the FLSA.

91. That Plaintiff be awarded punitive damages for discriminatory practices done with malice or with reckless indifference to the federally protected rights of Plaintiff;

92. That Plaintiff be awarded pre-and post-judgment interest;

93. That the Court award Plaintiff reasonable attorneys' fees and costs associated with this matter, including but not limited to expert fees and costs;

94. That the Defendants be ordered to require training regarding discrimination based upon race, sex, and retaliation; and

95. That the Court retain jurisdiction over Defendants until such time as it is satisfied that it has remedied the practices complained of and is determined to be in full compliance with the law.

**WHEREFORE,** Plaintiff also seeks injunctive relief, including but not limited to:

96. Training on the subject of employment discrimination for all of Defendant TAMU CS' employees;

97. Implicit bias training for all managers conducted by reputable outside vendors;

98. Supervisory discipline up to and including termination for any supervisor who engages in unlawful discrimination;

99. Active monitoring of the work areas to ensure compliance with discrimination policies; and

100. Monitoring by the Court or a federal agency to ensure that Defendants comply with all injunctive relief.

Plaintiff further demands that she be awarded such other and further legal and equitable relief as may be found appropriate and as the Court may deem just or equitable.

Dated: April 13, 2026

Respectfully submitted,

*/s/ Jay D. Ellwanger*
Jay D. Ellwanger
Texas State Bar No. 24036522
jellwanger@equalrights.law
Brian Pounds
Texas State Bar No. 24126432
bpounds@equalrights.law
**ELLWANGER HENDERSON LLLP**
11149 Research Blvd., Ste. 100
Austin, Texas 78759
Telephone: (737) 808-2260
Facsimile: (737) 808-2262

**COUNSEL FOR PLAINTIFF**